The Federal Child Pornography Statute defines pornography narrowly and specifically, requiring overt acts that are necessarily sexual. We know this because the first four categories listed in the statute refer to objective acts, sexual intercourse, bestiality, masturbation, sadistic or masochistic abuse. The fifth category at issue here, lascivious exhibition of the genitals or pubic area of any person, must be construed in light of the four categories that precede it. In other words, to also require overt acts that are necessarily sexual. That is required by several recent Supreme Court cases applying the canon of no seder associates. A word is known by the company it keeps. In each of the three cases, Gustafson in 1995, Yates in 2015, and Lagos in 2018, Supreme Court was presented with an attempt by the government to prosecute a defendant based on a far broader reading of an item in a list. And in each situation, the Supreme Court narrowed that item to interpret it consistent with the terms that preceded it. In this case, applying that canon requires construing lascivious exhibition of the genitals or pubic area to, again, refer to overt acts that are necessarily sexual. A purely objective test that looks at what was happening in the video and what was the victim doing in the video. Now, I think we can agree that this video was disturbing and the circumstances of its creation were disturbing. But what was getting out of the shower and drying off. And shorn of subjective intent, shorn of the circumstances. How old was the teenager? A teenager was 13. How old was your client? My client was, I believe, in his 30s, although I... 33. 33. Or 34. Yes. Okay. Go ahead. And, you know, and there's no question, for instance, that under Virginia state law, he was originally charged in Virginia state court with a couple of crimes, including taking indecent liberties with a minor by a custodian. His conduct may well have violated that statute. Had he been convicted in Virginia state court of that crime, he would have faced a sentence of one year to five years. Likewise, what he did may have been voyeurism under Virginia state law. And again, when that involves a minor, again, he could have faced a sentence of one year to five years. But when the federal government charged him with federal child pornography, the state indecent liberties charge was dismissed. The grand jury, federal grand jury indicted him. Correct. Federal grand jury. How many counts? There was a count of attempted production and then a count of possession. Two counts. Two counts, yes. And he pled guilty. He did. To one count. Correct. And he made a plea agreement. He did. And pursuant to the plea agreement, he secured a dismissal of the other count. That's correct. Although in this case, I think ultimately the attempted production count would rise and fall likewise on the objective characteristics of the video. And so in this instance, the count that was dismissed, he was no more guilty of than the count that he pleaded guilty to. And I think this is an important distinction between this case and many other cases involving fee bargains. Well, you're saying he couldn't have been punished anything more if he had pled guilty to both counts? The punishment would have been more serious. But my point is that... Well, if it's the same thing, he would have been entitled to a concurrent sentence probably. Well... Either it's a separate crime or it's not. If it's a separate crime, they can be run in the end. It's like two of these coal cars going down pass. Absolutely. My only point here is that in the circumstances of this case, when there's no indication from the video that the video he attempted to produce was any different than the video that he possessed, if he is actually innocent... I'm just trying to put this thing in perspective. He got indicted on two counts, two federal felonies. He pled guilty to one. He got a plea agreement from the federal prosecutor to dismiss the other. He went through a plea proceeding before the United States District Judge. He admitted his guilt. And he comes back later and says, well, I wasn't really guilty of a crime. And that's what this proceeding is about. You say that he's entitled to some kind of habeas corpus relief because he didn't commit a crime. That's correct. And that's, again, the holding of the United States Supreme Court in Bosley and the holding of this court in Adams in 2016 recognizes that there are some circumstances. There are limited circumstances. But there are, in fact, some circumstances when a defendant who pleads guilty is nonetheless entitled to relief because the undisputed facts to which the defendant... We're not going to dispute that. We're not going to dispute that. But the question is whether... I mean, he had a lawyer when he was prosecuted. He did. He was represented by counsel who signed off on a plea agreement, advised him to plead guilty and get this plea deal. The district judge went through a Rule 11 plea colloquy and satisfied herself that he was guilty of every element of the offense. And she later wrote a comprehensive opinion in this proceeding, explaining her view that he wasn't entitled to any relief. That's correct. That's where we... That's how you get up here. You're appealing Judge Smith's rejection of your contention that he didn't commit a federal crime. That's correct. But ultimately here, what the review on this question, it's ultimately a question of application of undisputed facts to a statute. And that is reviewed de novo. This is not a situation, for instance, you could imagine a defendant who is found with... You know, lives in an apartment and there's drugs found in the common area. And there's a question about whether these drugs belong to this defendant. And as part of the plea, the defendant says, yes, I admit it. These were my drugs. In that situation, the plea would be dispositive because the defendant has admitted to facts which do constitute a crime. But here, the... Mr. Corte's plea cannot turn something into a crime as a matter of law that is not a crime. There's no dispute about what the contents of the video are. The only question is, as a matter of law, do the contents of this video violate the pornography statute? And that is why this is a rare case, but an important set of cases in which the facts that were admitted to by the defendant, simply as a matter of law, do not constitute a crime. That is a legal question that this court has to review de novo. And while we understand that the district court interpreted the statute in a way and concluded that it was a crime, our argument is that the district court did not look to the text of the statute, apply the canons of statutory interpretation that show you how narrow and specific the requirements of the statute are. Again, this may have been, you know, this video may well have violated a different statute. Mr. Corte's conduct may well have violated another statute. Well, let's stay with the statute that is before us. You mentioned two very important things. You said voyeurism is not enough. I think you're right. There's statutes that deal with voyeurism. And you said the depiction was only nudity in relation to a 14-year-old girl taking a shower, correct? Correct. And therefore, you said under this statute, that's nudity, but it's not in relation to anything that's lascivious. Correct. But here's the question though. This is sort of rare. Voyeurism is sort of pull back, I'll look at what's happening. But in this case, doesn't it depict more than voyeurism because it's in the race gestile of the crime itself. Is it because he's narrating in a sense, his voice is heard, correct? His voice is heard. And he says things like, put the camera down on the floor of the shower. Turn it so the lens, the back is away from you, obviously. So that he tells her that it's not recorded. You hear that. So isn't that the lascivious aspect of it? That is because it's bad. But in these cases, some people like the idea that somebody's voice is in there. You hear it. You see the girl, but look, she's taking a shower. Put this down. That's more than voyeurism. It's not just he's looking at it. It's depicting his salacious narration, isn't it? Saying, look, turn the camera around here. Move it over here. Put it down on the floor. Some people get turned on by that added narration and active voyeurism that is depicted. This is different than a case where you're merely looking at a girl showering, right? And it's more than just a new girl showering. It's that together depicted jointly, is it not? So there is more narration. There's narration here, unlike in a classic. Right. But why is that narration not salacious? Well, because ultimately what the statute requires looking at is what, you know, the actual, what was the victim doing? And were those acts lascivious? It doesn't take into account the circumstances of the filming. How do you, how did you come to that conclusion? It says a depiction that of a salacious circumstances, doesn't it? Well, it says lascivious exhibition of the genitals. In other words, the... Right, a lascivious, but the depiction is audio and visual, is it not? But so ultimately, I want to take a step back and say two things. First of all, the fact that someone might be turned on by it isn't dispositive because as other courts have recognized, people can be turned on by all sorts of things that don't fall within the statute. Exactly. We're talking about stuff that was meant for people to be turned on by it, not the fact that they were. But wasn't it meant to be turned on by it? To watch this 14-year-old girl take a shower. You hear a man tell her, put it on there, put it on the face of it. Do this. I'm going to hand it to you over and you put it here. I'm telling you what to do. You don't think that was meant to be lascivious? So here's how I think we know that that doesn't fall within the statute, whatever Mr. Corte's intent was. So when Congress enacted the statute, there had been language, proposed language on the table that would have gotten more at the intent of the person filming. It would have banned... The proposed language would have banned depicting child nudity for the purpose of sexual stimulation or gratification of any individual who may view such depiction. So that's a circumstance where yes, even though what would look objectively be a shower because there's other circumstances in the video indicating that the producer was aroused and maybe wanting other people to be aroused by it would be covered by that. But that language, that language which includes a more subjective standard, which looks at the intent of the producer and the circumstances of the filming was rejected. And instead what we got was simply a listing of overt sexual acts. And there was no overt sexual act here. There was no overt sexual posing here. There was no instructions even from Mr. Corte for Ms. Doe to engage in any such acts. And so while if, for instance, Mr. Corte had requested, had told Ms. Doe to make, you know, pose sexually, for instance, that might, you know, get... How do you pose sexually? And you're already naked. How do you pose sexually? It's a very difficult question for me to answer, Your Honor. But you're posing to the court. I suppose you have an answer. Well, I mean, for instance, there was no... She wasn't posing in a way in which she was, you know, flaunting particular body parts or had a, you know, look of desire on her face or spreading her legs or things like that. You know, she wasn't doing anything other than washing herself. Yes, she was. She was putting the camera in a position where you could look into her crotch area while she was showering. Isn't that a salacious depiction? I mean, how many people put things down? Because she's... It's interesting that he's directing as well as she's a cinematographer. Was she not? But again... I know something about film and that kind of thing. But I mean, wasn't it? He was the director and she was a cinematographer. Is that correct? I'm not sure. Well, I'm not asking are you sure. I'm asking you to answer this question. Was she not the cinematographer? I would not call her the cinematographer. Okay, all right. I think she put... What was she then? She put the camera down on the floor and then she took a shower. Was she moving it to change what was being viewed to be viewed? To the extent she was... Do you know what cinematography is? I do, Your Honor. Okay, and that's not cinematography? To the extent she was moving, she... It has to be some film that you're watching a movie to be cinematography. We can call her a cinematographer. But to the extent she was moving, she was moving out of the camera. In other words, she was far from demonstrating any affirmative sexual act. Yeah, when she got out of the shower, she figured it was on. She tried to get... She crawled on the floor to try to get out of the rain. But it was such a wide angle, she couldn't get completely out of it. But I think all this reinforces that however disturbing this video was, it was not... It's not about disturbing. It's a matter of whether or not it meets what the statute says, a lascivious depiction. And that depiction includes the audio and her direction of the camera by his direction and her holding it. That's why that catch-all one, all those others don't apply. But the last one, Congress in their wisdom, said lascivious. And how do you define lascivious is difficult. So it has to be some context. And I'm saying, was that not lascivious to have the camera placed down? I think that was the most telling of all, to put it down on the floor so it would look up into your crotch as this 14-year-old girl showers. So someone else or anybody else who got possession of it could watch this. The camera was placed certainly in a way that showed for a few minutes of the video, not even throughout the shower, that showed her genitals. But again, that only... I would say only relevant if intent matters. And as we discussed throughout our brief in an argument that subjective intent doesn't count. If I can get back to Judge Gregory, your question about how he was directing. The original statute in Virginia, he was charged under the indecent liberties. One of the elements of that statute is actually an adult... But we're dealing with what he pled guilty to here in the federal court system. But I think that... And he admitted it was a lascivious exhibition to the judge. He admitted it in his guilty plea, right? He admitted it as far as he was concerned it was. He didn't take an appeal. He did not take an appeal. The law has not changed. You're not coming up here saying, well, the Supreme Court changed the law since he pled guilty. It didn't happen. That's correct. But ultimately, he was not in a position to... Mr. Cortes is not in a position to interpret a statute. He can admit to what he did. I'm not saying he was, but he admitted to the facts. He admitted it. He admitted the facts that were necessary. Judge Smith explains in her opinion. Well, he admitted that he filmed the video. But ultimately, whether the facts are a lascivious exhibition ultimately constitutes... He admitted in his view they were a lascivious exhibition. And he had to. That's an element of the offense. But ultimately... He admitted every element of the offense. But... Admitted them all. Under oath. So you're coming up here saying, and he didn't take an appeal. So you're really saying, well, I lied under oath. Well, when I pled guilty, I lied. I don't think... I mean, we've got rules about that too. He had been advised by his counsel that as a matter of law, the facts to which he admitting met the elements. Mr. Cortay, obviously, is not a lawyer. He's not a legal expert. So as far as he knew, based on the... He had a lawyer. He did. He got legal advice. It's what you do when you get charged with one of these federal indictments. He did. But ultimately, Judge King, neither Mr. Cortay nor Mr. Cortay's lawyer as a matter of law can interpret the statute. That is always a question for the court. He didn't even take an appeal. And... And he didn't try to go to trial. And one of the... And the question of whether you can come in now and say, well, we've fought him over for several years. Now we think maybe it wasn't the right thing to do. Well, first of all, Your Honor, I think the 2255 was petitioned within a year of the plea. But second, as this was a similar... Several years ago. I don't remember the dates. But when did he plead guilty? I plead guilty in, I believe, December of 2015. And he... 2015. Almost over four years ago. Petition was filed in 2016. I'm not talking about the petition. I'm talking about right now. And we're here right now. He didn't take an appeal. You could appeal these things up here. That's correct. And one of the... Two points about that. One of our arguments is that counsel was... This is what they call a collateral attack. That's right. We're helping these students out a little bit now. Fair. Fair enough. But two things. One of the things is we have an argument that counsel was ineffective for not consulting Mr. Corteda about an appeal. Is that on appeal? That is on appeal. It was part of the certificate of appealability. Is it? All right. Did you brief it? We did brief it. Section three of our brief. It's on appeal. It is on appeal. But second, what Adam said was whatever procedural defaults might otherwise apply, if the admitted facts as a matter of law do not constitute a crime, then those procedural defaults fall. We understand that Mr. Corteda was advised, improperly and poorly in our view, that the facts to which he admitting met the elements of the statute. But Mr. Corteda, no more than any other litigant in the court system, cannot interpret the statute as a matter of law. That is ultimately a question for this court. And that was the same situation you had in Bosley. It was the same situation you had in Adams. Finally, I realize I'm out of time. But I do want to get back to Judge King, your question about what is the relevance of the indecent liberty statute. I think that statute is relevant because, again, it illustrates the differences in the statute and how you interpret them. The federal child pornography statute says nothing about the circumstances of filming or what the producer is doing. The indecent liberty statute puts directly the solicitation at issue, the request at issue. Those different structures of the statute, the different language of the statute, reflects differences in the way the language is to be interpreted. His conduct may have violated that other statute, but this narrower, more objective, specific statute simply doesn't fall, doesn't cover this conduct. Reserve the rest of my time. Thank you, Mr. McDonnell. You have an introduction for us? May it please the court. My name is Tim McDonnell, and I represent Amicus Curiae in this case, the Washington and Lee University School of Law Advanced Administrative Litigation Clinic. It's my pleasure to introduce Ms. Danielle Phillips. Ms. Phillips is a third year student at Washington and Lee School of Law and a member of our clinic. With the court's permission, she'll be presenting oral argument on behalf of Amicus Curiae. Permission is so granted. Thank you, Professor, and welcome, Ms. Phillips. Thank you. You may present. Mr. Chief Judge, and may it please the court. Amicus Curiae asks that this court reject the use of the six-dose factor of intent and design in determining whether an image is or is not a lascivious exhibition of the anus, genitals, or pubic area of a minor. Now, if this court, in the alternative, chooses to elect to retain the use of the six-dose factor, we ask that the court clarify how that factor may be used. We assert that if the six-dose factor is to be used, then the court should declare that consideration of that factor is only relevant insofar as it reflects an objective intent or design to elicit a sexual response in the viewer. Your Honors, that is to say that consideration of the six-dose factor would then be limited to the four corners of the alleged child pornography. Your Honors, we ask that this court vacate and remand for reconsideration for the following three reasons. First, the district court judge's use of the six-dose factor impermissibly permitted the criminalization of behavior that was outside the scope of the statute. It did so by blurring the lines between actus reus and mens rea. Secondly, by the use of the six-dose factor, this will chill core First Amendment protected speech. And lastly, when considering the six-dose factor, this will convert objectively lascivious images of minors into non-child pornography and objectively non-lascivious images of minors into child pornography. How many circuits have approved these dose factors? Your Honor, presently all 11 circuits have had an opinion on the dose factors. Every one? Yes, Your Honor. And you're including us? Your Honor, we've never actually explicitly addressed the issue of how... So we haven't? Yes, Your Honor. So 11 of the 13 then? Yes, Your Honor. There's 13 circuits? Yes, Your Honor. All right. So we're one of the two that hasn't approved them. Yes, Your Honor. So your position would have us create a circuit split? No, Your Honor. The position which we're asking the court to adopt is to eliminate the use of the six-dose factor. Which is different than the other 11 circuits? Your Honor, the 11 circuits all have a varied interpretation of how the six-dose factor would be used. The first and the third circuit, Your Honor, they use it through an objective lens. The fifth and the sixth circuit, Your Honor, they use a limited context application of the six-dose factor. So there's not a consensus on how the six-dose factor could be applied. Your Honor, so this would not create a circuit split by eliminating the use of the six-dose factor. So you just said, we're going to just jettison. We throw the sixth out and so we're not a split because they're not unified on the sixth factor? Yes, Your Honor. There's no consensus on how the six-dose factor should be applied. So you're saying there's already a split? Yes, Your Honor. Presently. So we'd just be weighing in on the split? Yes, Your Honor. So which circuit, which position, which circuit do you want us to adopt? Your Honor, respectfully, none of the circuits have completely gotten it correctly. So none of them are right yet. No, Your Honor, but we hope that the fourth circuit will be in eliminating the use of the six-dose factor. And the reason for that, Your Honor, goes specifically to our first point. In the case before the court, the district court judge used Mr. Cortay's subjective intent to determine whether an image was or was not child pornography. Now, Your Honor, the problem in that... Such as what? What was used? Your Honor, well, specifically the judge on page 704 of the joint appendix says that intent in this context was relevant in determining whether or not the images was a lascivious exhibition of the anus. And he admitted to it in his plea proceeding? Yes, Your Honor. Yes, Your Honor. He fessed up? Yes, Your Honor. But we're not arguing whether or not the plea was a valid plea or not, Your Honor. We're arguing that the six-dose factor must be eliminated, Your Honor, because a subjective intent when interjected into the actus reus effectively relieves the government of having to prove both of those distinct concepts, Your Honor. So... But you're not saying in this case that there was an actus reus that could have supported lasciviousness, correct? Your Honor, we do not take a position on that. You don't take a position on that, do you? You're just saying you can't go outside and grab the mens rea along to satisfy that. Exactly, Your Honor. They must be established independently. As Professor Dressler says in Understanding Criminal Law, the actus reus is the volitional act that causes a social harm. Your Honor, the social harm under the Federal Child Pornography Statute is the prevention of a lascivious exhibition of the anus, genital, or pubic area of a minor, Your Honor. And that is the question that is before the court today, whether or not that act actually occurred and how this court will define a lascivious exhibition of the anus, genitals, or the pubic area of the minor. And the amicus position, Your Honor, is that that is defined using solely the first five-dose factors. And I assume you'd also have a way on whether audio or narrative can be a part of that actus reus, right? Your Honor, context which is included within the four corners of the video is certainly permissible, Your Honor. It's permissible to determine audio and visual, correct? Yes, Your Honor. Which factors does that come under? Your Honor, that would fall under any of the first five-dose factors, Your Honor, with regard to whether or not it's a lascivious exhibition. But more importantly, Your Honor, the audio and the actual images within the video is an objective determination of whether or not  that does not engage in whether or not the defendant desired or wished for the contraband or the potential contraband to be what the court must objectively determine what it is, Your Honor. Because otherwise, you could just take other things beyond the arrest gestine and say you have a propensity to what the proclivities are for that way. Therefore, this must have been this because you did so. Exactly, Your Honor. That is precisely our point. When the court is looking at extrinsic evidence that is beyond the four corners of the alleged child pornography, then the court is engaging in whether or not this individual potentially was a bad person. And they're not being found culpable for the actual image which should be in question, Your Honor. We're not moral police. We're just trying to judge whether or not, in fact, the crime was committed. Yes, Your Honor. That is precisely the question. Now, Your Honor, the second issue which we briefed is that use of the six-dose factor will actually chill First Amendment protected speech, Your Honor. Now, when looking at what the Supreme Court said in Hurley v. Irish American Gay Bisexual Group, they said that photos, paintings, pictures, all unquestionably fall under the ambit of the First Amendment, Your Honor. Now, reading this in conjunction with what the Supreme Court said in New York v. Ferber on footnote 18, the Supreme Court said that mere nudity is within the First Amendment, Your Honor. That is protected by the First Amendment. Now, this court said in United States v. Doyle when it was interpreting a Virginia state statute that very closely parallels and mirrors the federal child pornography statute, that mere nudity in a photograph, including that of a minor, does not constitute child pornography. Now, the reason that this is extremely important is because the usage of the six-dose factor, considering the six-dose factor in the context of the actus reus of a crime, will permit, will effectively chill speech. Now, a good example of this is a local photographer, Sally Mann. Sally Mann has cataloged photographs of her children in nude images as well as in partially nude images. And effectively, what will happen when this court looks at the seductive intent in the actus reus component is individuals who are engaging in clearly expressive conduct or clearly protected speech under the First Amendment will be chilled from wanting or desiring to engage in that conduct precisely because the court can engage in whether or not they had personal fantasies when creating that image. And that cannot be the objective of the federal child pornography statute. As Appellant Counsel already mentioned, the statutory language and under the statutory construction, it displays or portrays an objective intent that Congress wanted to portray. Bestiality, masturbation, anal to anal, Your Honor, all of those things speak clearly to what Congress was intending to prevent, the social harm which Congress was intending to stop. And that social harm was an objective display of the lascivious exhibition of the anus, genitals, or the pubic area. It is not for the court to engage in what the defendant intended or desired for the contraband to be. Because what the defendant desired for the contraband to be does not change what it is objectively, Your Honor. So effectively, what the district court was saying is that contraband changes its form based on who holds it. Because subjective intent can change contraband based on an individual's subjective intent. Subjective contraband will change based on the nature of what individual holds that contraband. That cannot be what this court is saying. Now, Your Honor, in conclusion, I see that my time is elapsing. We ask that this court eliminate the use of the six-dose factor because by permitting the use of the six-dose factor, this court will be relieving the government of their burden of having to independently establish both the actus reus and the mens rea. Additionally, Your Honor, the effect that it will have on the First Amendment can best be sought up by what the Supreme Court said in Ashcroft Free Speech Coalition. Your Honor, in that case, the Supreme Court said, the government may not suppress lawful speech as the means to suppress unlawful speech. Protected speech does not become unprotected merely because it resembles the latter. The Constitution requires the reverse. And for that reason, Your Honor, we ask that this court vacate and remand for reconsideration solely on the first five-dose factors. Thank you. But you take no position whether or not, in fact, even if we did do what you urge us to do, and that is eliminate the six-factor, whether or not the facts are sufficient even if you didn't use those. Yes, Your Honor, that is beyond the scope of the amicus curiae's position. You have to be careful. If you come as a friend of the court, we might borrow your expertise in many ways. Thank you, counsel. Thank you, Your Honor. All right. Mr. Young? May it please the Court. In United States against Wygand, one of the very first cases to interpret the phrase lascivious exhibition, the Ninth Circuit explained that one of the great evils of child pornography is that it attacks the human dignity of its child victims by treating them as nothing more than sexual objects. When this defendant tricked 12-year-old Jane Doe into filming a 24-minute video of herself naked in the shower, he treated Jane Doe as nothing more than a sexual object. When he pleaded guilty, he admitted that his possession of that video was illegal, and for three reasons he cannot escape that plea now. First, the defendant is not bringing a true actual innocence claim cognizable under the Supreme Court's decision in Bowsley. Second, the defendant cannot show that he is actually innocent of the more serious charge of attempted production of child pornography foregone by the government in exchange for his plea. And third, in any event, this video qualifies as a lascivious exhibition. I'd like to start with the first point, which is whether this is a true actual innocence claim. It is not. Judge King, you focused extensively a moment ago during my friend on the other side's argument about the fact that he pleaded guilty. That's entirely correct. And it's important to distinguish between two types of habeas claims that can be lodged after a guilty plea. A defendant could argue that he received such poor advice from his counsel that he was induced to plead guilty in a way that violates the Constitution. But in joint appendix pages 520 through 526, this defendant waived that claim entirely in the district court. So as the case comes to us, his lawyers correctly advised him that pleading guilty was the right thing to do. The other type of habeas claim that can arise after a guilty plea is a Bowsley claim. But as we argue in our brief, a Bowsley claim arises when the law has changed. Because as the Supreme Court there explained, a Bowsley claim is essentially like mutual mistake in contract law. It turns on the idea that the judge, the attorneys, and the defendant were all mistaken about what the law actually criminalizes. But that logic is not available in a case like this one, where the law hasn't changed one bit since the defendant pleaded guilty. This argument is further supported by the Supreme Court's decision in Brochette. Did the law ever punish mere nudity? No, Your Honor. The law punished possession of a lascivious exhibition. Yeah. But that's their point. They're saying that, well, courts can't create crimes. Only Congress here, the federal team, that says that's all they did was it was an exhibition of a nude 14-year-old girl. And therefore, you can't plead to something that's not a crime. Except, Your Honor, that's not what the defendant admitted to. The question of whether any depiction contains sexually No, no, no. Admission means nothing if there's not a crime. It's like saying, you know, I plead guilty to looking at the moon. Unless there's a statute that says looking at the moon is illegal, it makes no difference, does it? I wouldn't address it. That's their position. I'm not asking you to concede that. But I'm saying, but let's get to the point. What they're saying is that, no, mere nudity never was a crime. Let me address that point directly, Your Honor. It's important to distinguish two different types of argument and clarify what they're actually arguing. If the argument was the government had failed to charge an offense under the United States Code, I think that argument would have some force. But everyone agrees that possession of a lascivious exhibition is an offense under the United States Code.  And that question is always submitted to a jury. It's a fact question. Isn't that question in the four corners of the video? Isn't it answered there? No matter what he really admits to? I mean, of course he said, well, in the picture that's showing sex, and I had sex, and all those things. If that's not there, it wouldn't make any difference, would it? Would it? It would. It would? It would, and here's why, Your Honor. OK, well, please tell me that. How it would make any difference if it's not depicted? He just said, you know, we did this before. I turned it on. And tell me how that would have anything to do with whether or not that video is a crime. Tell me that. In United States against Broche, Your Honor, the Supreme Court said that when a defendant pleads guilty, he admits all the factual and legal elements necessary to constitute the offense. I agree with that. In our view, Your Honor. How is it an element of what he did with the girl before the camera was turned on? Your Honor, in our view. Is it an element? Factual and legal. So the factual element under Broche is, does this video contain sexually explicit conduct? And the legal element is, was its possession illegal? That's backed up, we think, by this court's opinion in LeMaster, which said that when a defendant pleads guilty under oath, that assertion is so solemn and important that a district court, generally speaking,  what the defendant said. The alternative view, Your Honor, we think has two consequences. The first is. So, I mean, in other words, you're saying that if I come to you and I say, hey, hey, hey, hey, come here. I got a video that has child porn on it. Really? Yeah. Here's $20 and you take it and the police officer stop his up, whoop, whoop, whoop, whoop. So you brought that tape. Let me look at the tape. And the tape shows a cartoon that has nothing to do with children. You're guilty because you played guilty to that. Even though the actual corpus delicti of the crime. Again, that's a little Latin for us. The body of the crime has nothing to do with what the statute criminalizes. You're saying that the admission alone would be enough? Your Honor, the district court has. Can you answer my hypo? I can. Well, please. In our view, the defendant has admitted that possession of that tape would be illegal. The district court has an independent gatekeeping function. I'm back with the $20 thing on the street now. I understand. OK. OK. I understand, Your Honor. What I'm saying is- My defendant played guilty that he purchased something that he thought he was getting child porn, but it turned out to be nothing. But he would still be guilty. If he pleaded guilty, under Broche, he admits that the video was illegal. That's our view. And that's consistent with this court's decision in Lebaster. The alternative view is that any time a defendant pleads guilty, there's no finality. Because he can always come in and argue that the conduct that he admitted to doesn't constitute an offense. And this court will always have to hear those claims on the merits. So let me say- Because that's our limit. That's the theory of our framers. That is, we only deal with controversies and looking at crimes of the United States. Therefore, there's no crime in the United States. We don't have that real Article III power to do so. So it's not about him retracting what he pled to as it is the power for us to adjudicate a crime that doesn't exist. That's the theory of the constitutional aspect of it. I have two responses, Your Honor. And then I do want to turn to the merits, if I could. If I let you go, you would. Thank you, Your Honor. The first is, keep in mind, of course, that the district court exercises an independent obligation to determine that there's an adequate factual basis. So in the example that Your Honor hypothesizes, we don't think that plea would ever go through. Because the court would review the materials and determine that there wasn't an adequate factual basis for the plea. The second thing on finality is, to take an example that my friend on the other side used. He said, well, this case is different because in, say, a drug case, if you admit that it's contraband, that's the end of the inquiry. And you can never bring an actual innocence claim. We don't think their theory of actual innocence is so bounded. Under the Analog Act, for example, there can often be quite a bit of factual dispute about whether or not a controlled substance is or is not illegal. So under their theory, a defendant can say, yes, I plead guilty, Your Honor. This was a controlled substance. Wait five years. File a 2255 and say, actually, I've been really studying the Analog Act, and we don't think this was contraband. And this court would always have to hear that claim. We don't think that's how habeas works, given existing Supreme Court precedent. To turn to the merits for a moment, Your Honor. Your Honor was 100% correct during my friend on the other side's argument to focus on the voyeurism argument. This video is not voyeurism. It's not voyeurism for a common sense reason, and it's not voyeurism for a statutory reason. The common sense reason is exactly as Your Honor articulated. In a voyeurism case, typically, the pornographer is not in the video at all. There's a hole drilled in the ceiling or in the wall. And what excites the voyeur is filming something that ought to be private. It doesn't necessarily have a sexual dimension. Here, this defendant is a character in the production. He places the video camera on the counter. He holds it over the shower curtain repeatedly so as to capture Jane Doe's entire body, including her genitalia. He then tells Jane Doe to put it on the floor of the shower where it's most likely to point up and capture images of her pubic region and genitalia. Then when she hands the camera back to him, he knocks the water off it and continues to hold it over the top of the shower curtain so as to capture her entire body. So that's the first reason purely as a matter of common sense. He's a character in the production. He's not a voyeur. The second reason is statutory, which is as the 11th Circuit explained in Holmes, which is another surreptitious recording of a minor in the shower case. The voyeurism statutes do not contain a purpose requirement. It doesn't matter why you're invading someone's privacy to film them. The act of filming them when they should be in private circumstances is illegal. But a lascivious exhibition requires that the depiction of the minor's genitalia or pubic region be captured precisely because it sexually excites the intended viewer of the film, another pedophile. So there's a purpose requirement here that doesn't exist in the voyeurism statutes. That, I think, is a helpful segue to the amicus's argument about what kinds of intent evidence are permissible in a case like this one. As we have argued in our briefs. And I've been arguing as well, they need these six dose factors. That's exactly what I was going to get to, Judge King. Oh, you are? We think this case is sufficient to decide based on the video itself. It's 24 minutes long. It is obvious what the defendant is doing. He is trying to capture the full body, including the genitalia, of a 12-year-old girl. We think that clearly qualifies as lascivious. But the government would strongly urge the court not to adopt the position of the amicus. We've reviewed essentially all the cases involving lascivious exhibitions. And when courts consider evidence outside the four corners of the depiction on the question of intent, it typically breaks down along one of two axes. It either deals with the nature of the charges that were brought, or it deals with the nature of the defenses. Let me start with the defenses. Oftentimes in a case like this, the defendant will make some defense to the jury that goes to his intent. So for example, there are a number of cases in which the defendant has said, this is protective nudity under the First Amendment. I think of this video as art. And in those cases, the courts of appeals have said, well, then it's awfully relevant for the jury to hear that you stored this purported art along with your collection of hardcore child pornography on your computer, which tends to show that you didn't think of it as art at all. You thought of it as a video, the purpose of which was to sexually excite you. Similarly here, and this goes exactly to the point you were just making, Judge King. This case is somewhat odd, and since there were no defenses made to the jury, the defendant pleaded guilty. He didn't have a trial. That's exactly right. He gave it up. When I practiced law, you came in for a plea proceeding. The defendant said, I'm guilty. And the judge asked the government to show the facts that convinces me, the judge, that I should accept this guilty plea. And the government puts on the facts before the judge, which here would include the video, I assume. And then the judge follows up and asks the defendant questions about that, and he admits that everything the government puts in evidence at the plea proceeding is true and accurate. Yes, Your Honor. And only after that, all those proceedings occur, does the judge accept the proposition that he's admitted guilt and satisfied each and every element of the charged offense? Yes, Your Honor. And that was my response to Chief Judge Gregory. I mean, I haven't looked at this plea proceeding in depth. Does this record show that happened here? The video was not submitted. There was a detailed description in the written statement. That's what I was getting at. The video was described. That's correct. And he acknowledged it. Correct. Based on your argument, you don't need the sixth factor, do you? Not to win this case. That's right, this case. That's correct. But I wanted to make the point that if, for example, this case had gone to a jury, in voyeurism defense cases involving lascivious exhibitions, voyeurism is itself a defense that raises intent. It's an argument to the jury that I was titillated just by filming something private. I wasn't titillated by minors. And I wasn't titillated by the genitalia or pubic area of minors. There are cases that have raised that argument. The Holmes case from the 11th Circuit is a good example. And there, the 11th Circuit said, if there's evidence that at the time or near the time that you filmed this video, you were sexually obsessed with this minor victim, even though that's outside the four corners of the depiction, it rebuts your voyeurism argument. And so, too, here, if this case had gone to a jury, we believe we would have been entitled to present evidence to that jury under the sixth DOS factor that this defendant was sexually obsessed with Jane Doe. Indeed, the pre-sentence report in this case revealed that he was given her. But here's the problem with that, counsel, and Ms. Phillips is urging us, and that is when you have a situation where you focus too heavily on the predilections of the filmer, producer, or the possessor, then you get away from the actus reus, that is, to lasciviously depict the adverb, right? It's an adverb. It gives more flavor to the verb, depict, doing something. A person could say, I'm not going to do anything, and act as a criminal pedophile. But everything they film is not necessarily an act that's guilt of the statute. They may say, you know what? I'm just going to show a girl who's new. She stays there. She's standing there, and she's underage, and it's just a picture, just a still shot of her, and it lasts for 24 minutes. But that doesn't make it lascivious depiction alone, just because he admits, oh, I loved it. Oh, I enjoyed it so much. He could admit all of those things, but it would not add to the culpability of the actus reus because it's still what you have is a nude 14-year-old girl. So that's the problem. You conflate it because you're saying, I know what your mind is. And if you show nudity, that alone, you are getting off on that. That might be the case. But the question is, what did I produce, and what do I possess? Let me throw up and adopt some limiting principles, Your Honor. And then let me respond to exactly that hypothetical, because it's important. The first is, the Second Circuit in Spore said, the Sixth Doss Factor can't stand alone. There has to be other evidence within the four corners of the depiction that tends to show that its purpose was to sexually excite the viewer. We have no problem with this court adopting that view. And largely because, as you said, I think quite eloquently, he was a part of the character here. That's exactly right. Right, but what Ms. Phillips wants us to do is look at a broader picture for the jurisprudence to be purer and more exact. And that is, you shouldn't have it such that you can blur those lines such, because all cases may not like this. It may just be nudity. Right. And taking a shower. So limiting principle one is the same thing the Second Circuit said in Spore. Limiting principle number two is, all of these cases are going to be fact-specific. And in every case, the district court judge will be able to exercise his or her discretion under Rule 401 and 403 to keep out prejudicial evidence. So in a case where the district court judge thinks the government has gone too far outside the four corners, a district court judge could say no. What we want to urge the court not to do is to say never, because the facts are going to change on a case-by-case basis. I also want to address, Chief Judge Gregory, Your Honor's very hypothetical, which is, what if it was a 24-minute video of a minor, fully nude, just standing there? In our view, Your Honor, I think that would be a question for the jury. Because one of the DoS factors appropriately is, was the minor posed unnaturally? And if I, as a pedophile, take a 12-year-old girl, and I put her in front of a background, and I say, stand there while I film you, we think a reasonable juror could conclude that the only purpose of creating that depiction is to sexually excite a pedophile. You mean, really? Even though it was looped? She only stood there for a minute, and you looped it and made it 24 minutes? That would be a harder case.  But if it were 24 minutes, Your Honor, I think it would go to a jury. As a fact-specific question for the jury's determination. I want to briefly mention our second argument, which is, under Bowsley, a defendant doesn't just have to show that he's actually innocent of the offense to which he pleaded guilty. He has to show that he's actually innocent of any more serious charge foregone by the government. There are not many cases that raise that prong of Bowsley. But this case is in the heartland of that reasoning. Because here, this defendant was charged with both possession and attempted production of child pornography. And the production statute carries a 15-year mandatory minimum that the defendant avoided by pleading guilty to a statute with a 10-year statutory maximum. Now, here, I think, is the cleanest way to argue why he can't show he's actually innocent. So he got out from under the most serious offense. That's right. He can't, in our view. Because in an attempt case, all of the intent evidence comes in, Chief Judge Gregory. Because all that matters is, did you take a substantial step in what was happening in your head? And so the fact that this defendant was sexually obsessed with the victim would come in an attempted production trial. Moreover, no federal court of appeals in a case involving a surreptitious shower recording has adopted the defendant's view. That includes the Seventh Circuit in Miller, the Eighth Circuit in Ward, the Tenth Circuit in Wells, and the Eleventh Circuit in Holmes. Their best case is a case called Whited from the Supreme Court of Tennessee that adopted a very narrow view of what the word lascivious means. But I would direct the court's attention to page 448 of volume 506 of the Southwestern Reporter Third. Because even the Supreme Court of Tennessee, after holding that the depiction in that case wasn't lascivious, said, alternatively, the evidence is, of course, ample here for the government to prove attempted production of child pornography. And if the government wants to recharge this defendant on an attempted production count, they are more than free to do so. That's this case. He cannot show that he is actually innocent of the attempted production charge. And that's another reason his habeas claim fails. I see my light is on, Your Honor, so I will simply conclude here, which is in this court's fugit decision, the court said that the case was bereft of actual innocence, save for the innocence of the minor victim. So too here. And that is why we ask the court to affirm the district court's denial of the habeas petition. Thank you so much. Mr. Lippert? Thank you, Your Honor. I want to briefly address the significance of the plea and then come back to the significance of the narration in the video. Briefly on the plea, I do want to point the court to the Wacosh decision out of the Sixth Circuit. It's cited on page 51 of our brief. And in that case, the Sixth Circuit had a situation where the defendants had admitted to participating in murders. And they had admitted in the plea that this violated a statute, the federal statute, with a commerce nexus. And yet, the court looked at the facts and said admitting to those murders without anything else in the record establishing commercial intent meant that the conduct to which they admitted did not constitute a federal crime. And what they said was because the defendants didn't understand the facts in relation to the law, those circumstances, quote, typifies an unintelligent guilty plea. So if you hold that the guilty plea is dispositive, you will be creating a circuit split with the Sixth Circuit decision, which was following the Supreme Court precedent that a defendant must understand the facts in relation to the law. Now on that question and the question of the narrator, and I think this is important both for the possession and the attempted production charge. There was a narrator, yes. But the narration here was a ruse. It was a ruse to get the video that he ultimately got. In other words, he was directing Ms. Doe so that she would be filmed naked in the shower. But ultimately, what was filmed was a person taking a shower. This would be a very different case if he had asked her to pose or to make sexual gestures or to talk sexually. Any of those things had he asked, if she had done them, the video would have been pornographic. And even if she hadn't, that would establish the attempt because he was attempting to create a lascivious exhibition. But here, the narration simply resulted in a video of a minor showering. In other words, the narration is what got the video made, but the narration didn't change what the video depicted. And ultimately, what that video depicted was someone taking a shower. I think that's an important difference because if that narration, if the narration is simply evidence that he was sexually aroused, that would have been a crime under the language that Congress rejected, depicting child nudity for the purpose of sexual stimulation or gratification. It certainly would have fit within that language. But when the statute is talking not about sexual arousal, but rather objective, specific, outward sexual acts, his narration simply cannot change, ultimately, what was filmed. It may have facilitated the filming, but it didn't ultimately change what was depicted. And that means both. Let me ask you a question. Would it have made a difference if he gave her a bottle of chocolate syrup and said, I want you to put this on your body while you're in there? Just let it cascade on your body while you shower? I think that might have made quite a difference. Why? Well, so chocolate syrup is different than water. I think if someone, I think when someone's pouring chocolate syrup on them in the shower. What is that? That makes it so that's lascivious? It seems like it would at least make it. It seems like it would make the sexual content heightened, or it would create sexual content. Because there isn't really a, at least I can't think of one, a non-sexual reason why you would be in the shower pouring chocolate on yourself. Certainly, at that point, you would have more than a teenager taking a shower. You would have. So in whose mind makes that lascivious? Well, I think it would, I think ultimately you would have to. It has to be in somebody's mind when you use a word like lascivious. Lascivious, isn't it? Isn't it? I just want to ask you, are you correct? When Congress, because we don't get to write the statute. Correct. I mean, it seems to me it's a rather vague term. Well, you ought to say what you mean. But they said lascivious. And that is a subjective term in itself, correct? What's lascivious to one person is not to another. Would you agree with that? I think that can be. But I think in the context of the statute, in the same way that. What is the statute? Because Congress printed a statute, they used the word that's vague. What does lascivious mean? It means it's to arouse sexual feelings, libido, urges of a sexual nature, correct? I think that's there. And you just told me that chocolate syrup does that where water doesn't. Didn't you tell me that? I think chocolate syrup is more likely to. But for somebody else, it might be vanilla cream or something. Well, but I think here is, I think. What you say my point though is? I do say it is because it's chocolate. Other people say, no, strawberry. I mean. Well, ultimately, I understand your point. But I think when lascivious exhibition, and this is where I think the Nostradamus canon and the trio of Supreme Court cases we cited, lascivious exhibition could, in theory, I suppose, you could say, well, listen, you have to look at subjectively what was going through the defendant's mind. But when placed in the company with four other things that are clearly specific objective acts, so you have that canon, as well as the rule of lenity, all of those things are going to compel the interpretation that it has to be, again, an overt act, one that is necessarily sexual. The chocolate syrup maybe rises to that level, maybe doesn't. I think that might be a borderline case. But simply a shower in which a person gets in the shower, washes herself, gets out of the shower, dries off, simply nothing out of the ordinary. When you get in the shower, don't you necessarily touch your genitals when you shower? It's hard for me to get an answer. You do. Don't you necessarily touch your genitals? Yes. OK. Well, don't you think that's so lascivious to have? That adds more than nudity, because you're going to have her washing and touching her breast, her pubic area, all those things. Does that add to lascivious? A shower is a context that introduces a lascivious act depicted, because you know they're not going to just stand on the water with their hands like this. They're going to put their hands on their body, and they're going to rub. Is that arousal? Could that be arousal like the chocolate was for you? I mean, there's no definition. I don't mean it. I mean, your definition. Your definition of chocolate. That's what I'm saying. Thank you, Your Honor, for that clarification. I will say this. All showers, or virtually all showers anyway, involve touching the genitalia. But I don't think Congress said that a video of a shower, no matter what the circumstances, creates a lascivious exhibition. I would say that the washing of the genitals, again, it makes it an exhibition. But I think it wouldn't be lascivious unless the manner in which the genitals were touched was a type of sexual touching, as opposed to simply the practical act of putting soap on them, washing them, and washing them off. And I think, you know, I'm not sure. I mean, maybe the government wants to take the position that any filming of a minor in a shower is, per se, pornographic. But I don't think that's possible to square with the statute. It's not possible to square with the legislative history. I mean, Congress took an analogous example of skinny dipping, which, if anything, is more, or at least arguably, is more inherently sexual than a shower. And yet Congress said that skinny dipping wouldn't be covered. And so again, someone might be a pedophile. Someone might film teenagers skinny dipping. Again, that might violate some other statute. But we know from legislative history that Congress did not intend for that to be a lascivious exhibition. An exhibition, perhaps, but a lascivious exhibition, no. And I don't think that would change based on narration of the producer. Because ultimately, what those specific 1, 2, 3, 4, 5 in the statute focus on is narrowly what is the minor actually doing. And that's what makes something pornographic, as opposed to voyeurism, as opposed to indecent liberties, as opposed to various other statutes that protect children. But this particular specific statute is much narrower. Thank you.
judges: Roger L. Gregory, Robert B. King